THE NEW JERSEY MIDLAND RAILWAY COMPANY v. PETER A. VAN SYCKLE.

1. Where a railroad company obtains under its charter the consent of the owner, by deed, to enter on lands and construct its road over a located route, with covenant for further assurance by a formal conveyance; after entry, construction of the road, payment and satisfaction

of the consideration, such land owner cannot, by notice, revoke his consent, and sue the company in trespass.

2. Such consent is not a mere license which may be revoked, nor is the company a tenant at will, but it is coupled with an interest, and is effective to hold the grantee in possession to carry out the purposes of the charter, until such further assurance and complete title to the lands is made.

3. The interest in land thus acquired, within the designated route, may be transferred to another railroad company into which the original shall merge, or consolidate with others, by legislative authority.

4. Where there are apt words in a writing to constitute a lease of lands for farming, and giving exclusive occupation to the tenant, although the rent is to be returned in kind by a share of the crops, the landlord is out of possession, and cannot maintain trespass.

In error.

The New Jersey, Hudson and Delaware Railroad Company was chartered by act of the legislature of New Jersey, March 8th, 1832; and, by said charter and several supplements, authorized to survey, lay out, and construct a railroad, or lateral roads, from the Delaware river, between the New York state line and where Paulins Kill empties into said river, to the Hudson river, opposite the city of New York.

The time for the commencement and completion of the road was extended by acts subsequent to the original charter.

March 17th, 1870, this company was empowered to merge and consolidate its capital stock, property, powers, privileges, and franchises, with the capital stock, powers, privileges, and franchises of the New Jersey Western Railroad Company, the Sussex Valley Railroad Company, and the Hoboken, Ridgefield and Paterson Railroad Company, or either, or any of said companies.

This consolidation was to be effected by agreements between said companies, copies of which were filed in the office of the Secretary of State; and immediately upon and after the first election of directors of such consolidated company, the several companies were to be merged into a new corporation, to be known as The New Jersey Midland Railway Company.

The New Jersey, Hudson and Delaware Railroad Company, the New Jersey Western Railroad Company, and the Sussex Valley Railroad Company, made this consolidation July 13th, 1870, by filing their agreements in the Secretary of State's office.

The line of the New Jersey, Hudson and Delaware Railroad Company was surveyed in two routes, through the lands of the defendant, Peter A. Van Syckle, in Wantage township, Sussex county. A writing under seal, called a " cession," dated August 23d, 1869, was executed by Van Syckle to this company, giving them the choice of the Sink Hole or Wall Kill routes, which had been surveyed by them through his lands. They accepted and approved the same for Sink Hole route, April 23d, 1870.

Work was commenced on the defendant's lands, in the early part of April, 1870, by a contractor of the company, and thus continued, until the railroad was completed. This work was begun before the organization of the New Jersey Midland Railway Company ; and after the consolidation was effected, said company continued the work which had been begun by the New Jersey, Hudson and Delaware Railroad Company.

The defendant in error, Peter A. Van Syckle, brought an action of trespass against the New Jersey Midland Railway Company, for damages caused by constructing the road over his land, in September, 1871, when the road was finished, excepting the crossings.

The company pleaded the general issue, and several pleas in justification. The case was tried at Sussex County Circuit Court, and a verdict rendered for the plaintiff below for $200.

This writ of error is brought upon certain exceptions taken at the time.

For the plaintiffs in error, *Kays* and *H. C. Pitney*.

For the defendant in error, *Coult*.

The opinion of the court was delivered by

SCUDDER, J.    The principal exception is to that part of the charge of the court which instructed the jury that the act of the legislature of March 17th, 1870, authorizing the consolidation of these several companies, and the consolidation agreements and proceedings thereunder, taken in connection with the deed of cession, (as it is called) formed of themselves no defence to the action.

It is claimed, on behalf of the railway company, that this deed gave the New Jersey, Hudson and Delaware Railroad Company a right of entry on the lands to construct their road, coupled with an interest, and that it was not revocable.   And also that such interest was assignable, and had been legally assigned by the act of consolidation and the agreements and proceedings thereunder.   Hence it is insisted that the deed, with this connection, was a complete defence to the action.

This is, therefore, a question of construction, to determine the legal effect of those papers which were offered in evidence.

And first, the deed or cession itself is in form, that Peter A. Van Syckle, in consideration of the benefit to be derived by him from the construction of a railroad through the township, and of the sum of one dollar paid by the New Jersey, Hudson and Delaware Railroad Company, the receipt whereof was acknowledged, did covenant and agree that he would grant, convey and release to said company, or their successors or assigns, by a good and sufficient warranty deed, so much land owned by him, therein defined, on or near the line surveyed for such railroad, on what is known as either the Sink Hole or Wall Kill routes, as might be required by said company for the construction and operation of said railroad across his said premises, not exceeding six rods in width, unless more be required for cuttings and embankments.

The company was to build and maintain fences, and construct crossings.   He further agreed that said company might enter upon said lands and commence the work of construction before the formal conveyance aforesaid was executed, they doing no unnecessary damage, and that he would execute

such conveyance whenever duly notified of the precise location and furnished with a proper description of the premises required.

This was signed and sealed by Van Syckle in the presence of a witness, and on the part of the company accepted and approved for Sink Hole route, April 23d, 1870.

It was the manifest purpose of this writing to give the railroad company the right of way through the farm of the defendant in error, without any other compensation than that which would come from the construction of a railroad upon and near his lands, with the immediate possession and use of the land required, and a covenant for full assurance of title by warranty deed, when the precise location was fixed and a description furnished. The New Jersey, Hudson and Delaware Railroad Company went into possession of the Sink Hole route through these lands, constructed their roadway until the consolidation took effect, on July 13th, 1870, after which the Midland Railway Company continued until the work was finished. Mr. Van Syckle gave no other deed, or assurance of title, and now says that the writing he executed was only a license, revocable at his will, and that, as a mere personal privilege, it could not be assigned to others, and it ceased when the company to which the license was given merged, or consolidated with others. Nothing need be said of the equity or fairness of such a position, for he puts himself upon his legal right, and in a court of law his case must be judged by that standard.

It is true that if he has given only a license to enter and make a roadway on his lands he may, after it has been revoked by notice, or a transfer of the way has been made, so that the transferee has no further interest therein, bring an action of trespass for acts done after such notice or transfer, or an ejectment, in a court of law, and recover. The equities which grow out of the acts and peculiar relations of the parties may be protected in another form, and he may be equitably estopped in asserting his exclusive ownership of the land occupied by the roadway, unless compensation be made. It

is not necessary, however, to determine this matter now, or intimate more than that there may be a remedy, if the defendant in error be right in his insistment.

We may err, however, if we fail to look at the charter of this company before proceeding further in this matter of construction, to learn exactly what is required in obtaining the right to lands for the purposes of their road, and whether the statute has changed the general law. By the charter (*Laws of* 1832, *pp.* 135, 136,) the New Jersey, Hudson and Delaware Railroad Company are authorized to enter upon lands, survey, level, lay out and locate roads, and when the routes have been determined, and a survey deposited in the office of Secretary of State, to enter upon, take possession of, hold, use and occupy said lands, &c., subject to compensation, and payment or tender of payment, before entering and breaking ground, &c., unless the consent of the owner be first had and obtained.

When the company cannot agree with the owner, then proceedings may be taken for condemnation, by application to a justice of the Supreme Court for commissioners to assess damages. The two methods of acquiring the right to enter, use and occupy the lands for a railroad, are either with the consent of the owner or by condemnation. The former method has been attempted in this case.

What is intended by the consent of the owner has received judicial construction in this court. In *Hetfield* v. *The Central Railroad Company*, 5 *Dutcher* 571, such consent was construed to be a satisfactory, legal consent, or a title by purchase, which, by the law of New Jersey, can only be acquired by deed or will made by a person of full age and of sound mind. A consent by parol or in writing is only a license which is revocable, and will not convey a permanent interest in lands, though it may be a defence for acts of a temporary nature affecting lands while such consent continues. *Den ex dem. Richman* v. *Baldwin*, 1 *Zab.* 404; *Hewlins* v. *Shippam*, 5 *B. & C.* 221; *Cook* v. *Stearns*, 11 *Mass.* 533; *Wood* v. *Leadbitter*, 13 *M. & W.* 838; 2 *Am. Leading Cases* 736, 759, &c.

The subject of consent by the land owner has also been discussed in the case of *Veghte* v. *The Raritan Water Power Co.*, 4 *C. E. Green* 153, in the Court of Chancery, and in the same case in the Court of Errors and Appeals, 6 *C. E. Green* 463. The latter court held where the charter required a written consent or permission to divert water, that this was a substitute for and equivalent to the common law mode of conveying the right by deed; that the consent given in writing obtained after the act, was valid.

The distinction was there taken between a case where no mode of consent is indicated, as in Hetfield *v.* The Central Railroad Company, and where a special manner is stated, as a written consent or permission.

The measure of equitable relief where improvements have been made under license, was also carefully considered and decided in the case of Veghte *v.* The Raritan Water Power Company.

The statute under consideration is like the charter of the Central Railroad Company, and no form of consent is prescribed. Its construction would therefore be controlled by Hetfield's case, if the facts were similar. But in that case, there was only a parol consent which could not be construed to operate as a deed, giving an interest in lands. Here the consent is in writing and under seal; but it is still claimed that it is only a license, not a grant or conveyance of an interest in the land. It may be so if such is the expressed intention of the parties, and no assignable interest will pass by it. But is it so? I think it is a license coupled with the grant of an interest which, by its terms and the operation of the statute by which the New Jersey, Hudson and Delaware Railroad Company was incorporated, passes the right to enter, construct and maintain the railroad upon the designated route over the lands of the defendant in error. The charter authorizes the survey, location of the route and construction of the works, upon certain conditions of previous payment, unless the consent of the owner be first had. By section 8, if the company cannot agree with the owner or owners of such required land for the use or purchase thereof, then they

may proceed to condemnation. In this case, an agreement in writing, under seal, has been obtained from the owner, for the entry upon, the use and purchase of the land. The company entered by such formal consent of the defendant; the labor and money have been expended and the work has been substantially completed; the compensation fixed has been paid and satisfied; every condition precedent has been performed by or in behalf of the company. All that remains to be done, if anything, is the building of fences and crossings, which are subsequent, and even if unperformed, would not defeat the grant. The consent thus executed is effective to hold the grantee in possession to carry out the purposes of the charter until the further assurance and complete title to the lands is made. The defendant in error cannot now divest the interest by refusing to execute a good and sufficient warranty deed, according to his agreement, and make the company and their assigns trespassers.

In *Doe d. Hudson* v. *Leeds and Bradford Railway Co.*, 15 *Jur.* 946, (6 *E. L. & E. R.* 283,) in the Court of Queen's Bench, 1851, a special railway act contained the usual clauses, giving the company powers for the compulsory purchase of lands, and by section 158, the company were not, except by the consent of the owner, to enter upon any lands which were required for the purposes of the act, until they had paid or deposited in the Bank of England, the purchase money or compensation agreed upon or awarded to be paid. In 1845, the lessor of the plaintiff entered into an agreement by which he permitted the company to enter upon the lands in question, and agreed to refer the amount to be paid to him to an arbitrator. The defendants entered and did some work; the arbitrator made his award. After the award, in the course of discussion as to the terms of the conveyance of the lands in question to the defendants, a dispute arose, and finally the lessor of the plaintiff gave notice to the defendants to quit and deliver up possession of the land. An action of ejectment was brought. It was contended that the defendants were tenants at will; that where a vendor agrees to sell to a

vendee and the treaty for the purchase goes off, the vendee is only tenant at will, and the tenancy could be determined by notice.   Lord Chief Justice Campbell delivered the opinion of the court, holding that such demand of possession did not make the company trespassers, and that ejectment could not be maintained against them.   The sections of the statute appear in the note to the case and do not there differ materially from this charter.

Patterson, Justice, says :   " Under their special act the defendants cannot enter upon lands, which they have power to take in a compulsory manner, until compensation be made, except by consent of the owner.   In this case, the consent of the owner was given, and nothing remained but to settle the amount of the compensation ; otherwise, if the land owner was not satisfied with the amount awarded to him, he might revoke his consent, and make the company trespassers, which would open the door to the exercise of great oppression to railway companies."

Without fuller particulars of the charter, and the agreement in the above cited case, I should not be willing to hold it as complete authority, but illustrative ; and, independent of such authority, construe this consent or cession as more than a mere agreement to sell and convey lands, and by its terms giving an irrevocable right of entry to construct and maintain a railroad with an interest greater than that of a mere licensee, or a tenant at will.

The company having, therefore, an interest in the lands occupied by the railroad, it was assignable by the authority of the legislature, as any other legal interest in lands may be assigned.   *Southard* v. *The Central R. R. Co.*, 2 *Dutcher* 13. This assignment was effected by the agreements executed by the proper officers of the several companies who have consolidated under act of consolidation.   (*Acts,* 1870, *p.* 811.) Section 3, p. 812, enacts that the New Jersey Midland Railway Company shall succeed to the property, rights, powers, privileges, &c., of the several companies.   And all property, real, personal, and mixed, &c., shall be taken and

deemed to be transferred to and vested in the company thereby created, without further act or deed ; and all property, rights of way, and all and every other interest, shall be as effectually the property of said New Jersey Midland Railway Company, as they were of the former corporations parties to said agreement. See further the act of 1871, p. 1093, validating and confirming the consolidation of these companies.

It is also covenanted and agreed by said Peter A. Van Syckle, in the deed of cession, that he will grant, convey, and release to said company, *or their successors or assigns*, by a good and sufficient warranty deed, so much of the land, &c. This covenant shows that the rights under this were not to be limited to the New Jersey, Hudson and Delaware Railroad Company, but were to be extended to their assigns without restriction. The quality of an exclusive right and personal privilege which belongs to a mere licensee, is expressly contradicted by the words of this grant.

To the extent, therefore, of the lands described in said consent or cession, on the Sink Hole route, the acts of the Midland Railway Company, and of the New Jersey, Hudson and Delaware Railway Company, in constructing their roadway with proper care and skill, and all damages arising from such use of the same, the consent or cession was a legal defence, and should have been admitted as such. It was allowed to go to the jury, with other facts in the case, as evidence of a license to the company ; but it was charged that of itself, it was not a legal justification of the alleged trespass ; in this there was error. If the company have widened their route beyond the width named in the consent, for such excess it would be no justification.

It further appears, in the bill of exceptions, that the farm of Van Syckle was rented by him for a money rent, to one Drew, for one year, viz. : from April 1st, 1870, to April 1st, 1871, during which time Drew had exclusive possession. The court rightly charged that, for any trespass upon the land during that time, Van Syckle could not recover in that

form of action; he must be in possession to maintain an action of trespass.

By an agreement dated February 7th, 1871, the farm was rented by Van Syckle to one Noah Bross, who entered April 1st, 1871, and continued in actual possession of the premises up to the time of the commencement of this suit. The court charged that Bross was a mere occupant or worker under the plaintiff, and the possession of the premises remained in Van Syckle, and he might recover in trespass during the time of Bross' occupancy, if the company were wrong-doers. This is also assigned for error.

There is much conflict in the cases in deciding what is the true relation of the owner and the occupant of the lands, where the crops are to be divided between them in shares or proportions, from time to time, as they are gathered. A full statement of the results derived from these cases, and a number of the authorities will be found in *Taylor on Landlord and Tenant*, § 24, *and the notes;* also, in the opinion of Judge Woodruff, in *Taylor* v. *Bradley*, 39 *N. Y.* 129. It will not be necessary to repeat them.

In the absence of such conflict of authority in the different states, there would seem to be no great difficulty in applying the ordinary rules of construction to such arrangements, and interpreting them as the parties have made them, and according to their expressed intention. Where they have the usual forms of leases, with a return of rent in kind they should be so construed; and where they are manifestly contracts for work and labor, and a share of the crops is given for such services, they should be so interpreted. In whatever form the parties have made their contract they should be bound by it.

If the landlord desires to retain his possession of the land, and of his share and interest in the crops, while undivided and before delivery to him, let it be so stipulated in the agreement; if he chooses to put the tenant in possession of the land and crops until they are gathered and delivered, let these be the terms of the contract. There would seem to be

no good reason for straining the construction of a contract relating to farming lands, to reach a conclusion favorable to either party, which they have not expressed.

The cases of *Doremus* v. *Howard*, 3 *Zab.* 390; *Guest* v. *Opdyke*, 2 *Vroom* 552, and *State, Edgar, pros.,* v. *Jewell*, 5 *Vroom* 259, were decided upon the facts in each case. We are called upon now to construe the instrument between these parties to determine whether the land owner, Van Syckle, has reserved the exclusive possession of his farm, so that he may maintain trespass against the Midland Railway Company, who, he alleges, has disturbed his possession, or whether he has made a lease to Bross, which divests him of such possession. We find in this article apt words to make a lease. There are terms of demise, reserving rent, and giving exclusive occupation to the tenant during the term. The instrument begins in the usual form of a lease: "That said Peter A. Van Syckle, for the consideration of the covenants hereinafter mentioned, doth demise and let unto the said Noah Bross, his executors, administrators and assigns, all that farm, plantation and premises, situate in the township of Wantage, &c., to have and to hold the said land and premises for the term of three years from the 1st day of April next ensuing, to be used and worked on shares upon the terms and conditions hereinafter mentioned and set forth," &c. Then follows what each shall put upon the farm, and how the products shall be divided from time to time between them. There is a proviso for forfeiture of this lease, as it is called, if the tenant draws or receives more than his share at any time. When the term expires he shall deliver the premises to Van Syckle in as good condition as he takes the same. He is to take good care of the buildings and fences, and keep them in as good condition as when he takes possession of the same. Either party can end the lease by giving three months' notice, before April 1st in each year. Van Syckle reserves the right for his former tenant to enter, after his term, and cut and harvest the growing grain, and also the right for himself to enter on said premises at all times, for

the purpose of building or repairing, but not so as to interfere with the business and work of said Bross, &c.

It is impossible to reconcile these terms of the lease with the position that Van Syckle has the exclusive possession of the premises during the term, or even that he has a possession in common with Bross, his tenant.

It is not necessary to determine now what each shall receive as his share of the products of the farm, and how he shall receive it. The rights of each are provided for in this respect. It is enough to say that there is nothing in such provisions inconsistent with the terms above stated, and others in the lease, implying that Bross had the exclusive possession of the farm. If this be so, then Van Syckle could maintain no action for trespass on these lands during Bross' term, and there was error in the charge to the jury—that the possession of the premises remained in him.

The judgment is reversed.

*For reversal*—The CHANCELLOR, CHIEF JUSTICE, BEDLE, DEPUE, SCUDDER, VAN SYCKEL, WOODHULL, CLEMENT, DODD, GREEN, LILLY. 11.

*For affirmance*—None.